1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JADE DEVERE CHESTER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:14-CV-03113-JTR<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos. 14, 19.  Attorney D. James Tree represents Jade Devere Chester (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 5.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on July

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

21, 2010, with an amended disability onset date of July 21, 2010.  Tr. 42, 129.

The application was denied initially and upon reconsideration.  Administrative

Law Judge (ALJ) Gene Duncan held a video hearing on September 5, 2012, Tr. 34-

71, at which Plaintiff, represented by counsel, testified as did medical expert

Donna Veraldi, Ph.D., and vocational expert (VE) Trevor Duncan.  The ALJ issued

an unfavorable decision on October 24, 2012.  Tr. 15-33.  The Appeals Council

denied review.  Tr. 1-6.  The ALJ's 2012 decision became the final decision of the

Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §

405(g).  Plaintiff filed this action for judicial review on August 12, 2014.  ECF No.

1.

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the

ALJ's decision, and the briefs of the parties.  They are only briefly summarized

here.

Plaintiff was 47 years old at the start of the hearing.  Tr. 72.  Plaintiff

stopped going to school in the ninth grade, but later earned a GED.  Tr. 37.

Plaintiff can read but has trouble doing math.  Tr. 38.  Plaintiff previously worked

as a mechanic in a seafood processing plant and last attempted to work driving a

tractor at a cherry orchard.  Tr. 38-39.  Plaintiff testified that he can get a job, but

after a matter of weeks or months, he will "just walk away from it."  Tr. 38.

Plaintiff attributes his inability to hold a job to getting angry with people and his

bipolar disorder.  Tr. 38.

Plaintiff testified that he regularly drinks alcohol.  Tr. 40.  Plaintiff drinks

about eighteen cans of beer every three or four days.  Tr. 40.  Plaintiff testified that

he last used street drugs in 2007.  Tr. 40.  Plaintiff testified that he drinks because

he cannot afford medication.  Tr. 40.

Plaintiff testified that he is anxious and depressed, doesn't like or get along

with people, and doesn't like authority figures.  Tr. 41.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants

1  cannot do their past relevant work, the ALJ proceeds to step five, and the burden

2  shifts to the Commissioner to show that (1) the claimants can make an adjustment

3  to other work, and (2) specific jobs exist in the national economy which claimants

4  can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194

5  (2004).  If claimants cannot make an adjustment to other work in the national

6  economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(i-v).

7  ### ADMINISTRATIVE DECISION

8  On October 24, 2012, the ALJ issued a decision finding Plaintiff was not

9  disabled as defined in the Social Security Act.

10  At step one, the ALJ found Plaintiff had not engaged in substantial gainful

11  activity since July 21, 2010, the application date.  Tr. 20.

12  At step two, the ALJ determined Plaintiff had the following severe

13  impairments:  Left Ear Hearing Loss—Tinnitus Partial; Depressive Disorder, NOS;

14  Posttraumatic Stress Disorder (PTSD); and, Alcohol Abuse.  Tr. 20.

15  At step three, the ALJ found Plaintiff's impairments met Listings 12.04,

16  12.06, and 12.09 when Plaintiff's substance abuse was taken into account.  Tr. 21.

17  If Plaintiff stopped the substance use, the ALJ found that Plaintiff's remaining

18  limitations would still have a severe impairment or combination of impairments,

19  but his impairments would not meet the Listings singly or in combination.  Tr. 23.

20  At step four, the ALJ found that if Plaintiff stopped the substance use,

21  Plaintiff would have the residual function capacity (RFC) to perform detailed

22  medium to heavy work with the following limitations:

23

24  [H]e would need to rest one to two minutes every hour; daily physical
therapy for his first few weeks of employment so he can condition

25  himself, but if employer won't allow it, he will have to do it on his
own time; work on objective criteria of the job goals regarding

26  objectives not quotas; work independently; his assignments should
focus on using tools and working with material, not involving people

27  as the subject matter; he would need frequent supervision by a

28

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 4

supervisor for the first month on the job; should have no direct access to drugs or alcohol; not perform security, medical, or health work; he would be off task 4.5% of the work day in small increments; should not be responsible for executive decision-making; should have superficial contact with the public more than face-to-face; should not perform fast paced production work or conveyor belt work; and should have only occasional interaction with coworkers.

Tr. 25.  The ALJ concluded that, if Plaintiff stopped the substance use, he would be able to perform his past relevant work as a material handler.  Tr. 29.

The ALJ further found that Plaintiff's substance use disorder is a contributing factor material to Plaintiff's disability because Plaintiff would not be disabled if he stopped the substance use; therefore, the ALJ determined that Plaintiff was not disabled at any time from the date of Plaintiff's application to the date of the ALJ's decision.  Tr. 29.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) not making required factual determinations at step four; (2) not including all of Plaintiff's functional limitations in his hypothetical questions to the VE; (3) finding Plaintiff did not provide adequate proof for not being able to afford mental health treatment; and, (4) failing to properly evaluate Plaintiff's substance use in light of his mental impairments.

## DISCUSSION

## A.    Drug Addiction or Alcoholism (DAA)

Plaintiff argues that his substance use and mental impairments are inexorably intertwined and that the ALJ erred by not following Social Security Ruling (SSR) 13-2p in evaluating the effect of Plaintiff's substance abuse on his mental impairments.  ECF No. 14 at 20-22.

The Social Security Act bars payment of benefits when DAA is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) &

1382(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). If there is evidence from an acceptable medical source that Plaintiff has a substance abuse disorder and the claimant succeeds in proving disability, the Commissioner must determine whether DAA is *material* to the determination of disability. 20 C.F.R. § 416.935 (emphasis added); SSR 13-2p at ¶ 8(2) (Feb. 20, 2013), *available at* 2013 WL 621536 at *4. That is, the ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if he would still be found disabled if he stopped using drugs or alcohol. *Bustamante*, 262 F.3d at 955. DAA is a materially contributing factor if the claimant would not meet the Commissioner's definition of disability if claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). A claimant has the burden of showing that DAA is not a contributing factor material to disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

Taking into account Plaintiff's substance abuse, the ALJ found Plaintiff disabled at step three as Plaintiff met Listings 12.04, 12.06, and 12.09. Tr. 21. Due to evidence of Plaintiff's alcohol abuse, the ALJ went through the sequential process a second time separating the effects of Plaintiff's substance abuse from his mental impairments. At step three, the ALJ found that, without alcohol abuse, Plaintiff's impairments did not meet the Listings singly or in combination as Plaintiff would have only mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace, and no episodes of decompensation. Tr. 23-24. At step four, the ALJ formulated Plaintiff's RFC (without substance abuse) and found that Plaintiff was capable of engaging in his past relevant work as a material handler. Tr. 29. Because the ALJ found that Plaintiff would not be disabled if he stopped the substance use, the ALJ concluded that Plaintiff's substance use disorder was a contributing factor material to Plaintiff's disability. Tr. 29.

Preliminary, Plaintiff criticizes the ALJ for "not follow[ing] the

requirements of SSR 13-2p." ECF No. 14 at 21. But the Court notes that SSR 13-2p was not published until February 20, 2013, and did not go into effect until March 22, 2013. As the ALJ conducted the hearing and issued a decision in this case well before these dates, the ALJ is excused from specifically relying on SSR 13-2p. Furthermore, SSR 13-2p does not change existing regulations, but rather consolidates and explains them. Despite not relying on SSR 13-2p, the ALJ's materiality analysis is still in accord with the regulatory framework and case law. *See* 20 C.F.R. § 416.935; *Bustamante*, 262 F.3d 949.

Plaintiff points to "policy" language in SSR 13-2p that states the Commissioner does "not know of any research data that [it] can use to reliably predict that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." ECF No. 14 at 20 (citing SSR 13-2p). Plaintiff argues that this policy language requires that ALJ to look "for periods of sobriety in order to evaluate the actual effect of substance abuse on mental health." *Id.* The Court agrees with Plaintiff that periods of sobriety are useful in evaluating whether a claimant's substance abuse is material to his or her disability. *See Radford v. Colvin*, 2014 WL 688285, at *7 (E.D. Wash. Feb. 21, 2014) (ALJ should "consider additional evidence, including periods of abstinence, to determine whether a claimant would still be disabled in the absence of DAA"). But the ALJ did consider evidence gathered during Plaintiff's periods of alleged sobriety. As discussed *infra*, Plaintiff reported being sober for two years at the time of Dr. Dougherty's December 2010 consultative examination. Tr. 250-58. The Court finds the ALJ made no error in not identifying specific periods of sobriety.

Plaintiff's argument that the ALJ failed to identify periods of sobriety is further undermined because it is uncertain whether Plaintiff actually had periods of extended sobriety for the ALJ to identify. "[W]hen the claimant is actively abusing alcohol or drugs, [the DAA] determination will necessarily be hypothetical

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 7

and therefore more difficult than the same task when the claimant has stopped."
*Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).  As noted by the
ALJ, Plaintiff was an inconsistent historian regarding his alcohol use.  Tr. 23.  For
instance, in January 2011, Plaintiff admitted to drinking occasionally, Tr. 283, but
this was only one month after Dr. Dougherty's evaluation at which Plaintiff stated
he had consumed alcohol for most of his life but had been sober for two years, Tr.
252-53.  At the hearing, Plaintiff testified that he was regularly drinking beer.  Tr.
40.  Plaintiff's admission of alcohol use contemporaneous to the hearing date,
combined with his past inconsistent reporting, casts doubt on whether Plaintiff has
ever obtained extended sobriety.  Plaintiff's active alcohol use makes the DAA
analysis "more difficult" and makes the ALJ's attempt to determining his
functioning when sober somewhat "hypothetical."  *Brueggemann*, 348 F.3d at 695.

Contrary to Plaintiff's argument, the Court finds substantial evidence
supports the ALJ's DAA materiality analysis.  *See Benelli v. Comm'r of Soc. Sec.*,
2015 WL 3441992, at *23 (D. Mass. May 28, 2015) ("The dispositive inquiry is
whether substantial evidence supports the [DAA] materiality finding.").

Dr. Dougherty completed a consultative evaluation of Plaintiff in December
2010.  Tr. 250-58.  Plaintiff reported to Dr. Dougherty that he had been clean and
sober for two years and Dr. Dougherty found Plaintiff's substance dependence
disorders were all in sustained remission.  Tr. 257.  Dr. Dougherty noted that
Plaintiff reported that his alcohol use caused past relationship, financial, and legal
problems, and made it so "[h]e could not keep a job."  Tr. 252.  Dr. Dougherty
concluded that Plaintiff's social skills were "good," his "thinking was basically
logical and goal-directed," his "intelligence appears to be good," and that Plaintiff
"should be able to understand, remember, and follow both simple and complex
instructions."  Tr. 258.

The ALJ did not specifically state what weight he gave to Dr. Dougherty's
opinions, but he appeared to credit Dr. Dougherty's evaluation as the ALJ

mentioned it throughout the his decision.  The ALJ summarized Dr. Dougherty's opinion as finding that Plaintiff "was capable of maintaining superficial social interactions and if he remained clean and sober he could maintain a job, as that was one of the main reasons he alleged he could not in the past."  Tr. 27.  This is not an unreasonable reading of Dr. Dougherty's evaluation.  Dr. Dougherty did not specifically state that "if [Plaintiff] remained clean and sober he could maintain a job," as found by the ALJ, Tr. 27, but the question of whether a claimant possesses the ability to work is a question reserved for the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2011).  To the extent that Dr. Dougherty's opinion is subject to multiple reasonable interpretations, the Court must defer to the ALJ.  *Tackett*, 180 F.3d at 1097.

The testimony of Dr. Veraldi, the medical expert, is consistent with Dr. Dougherty's evaluation.  At the hearing, the ALJ asked Dr. Veraldi whether Plaintiff's alcohol use could be separated from his other mental impairments; Dr. Veraldi stated that the two issues were "really intermingled."  Tr. 53-54.  But Dr. Veraldi concluded that Plaintiff "would function better if he was sober," and that, without substance use, Plaintiff's other mental impairments, particularly his PTSD, would cause mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace.  Tr. 54.  The ALJ gave Dr. Veraldi's opinions significant weight reasoning, in part, that Dr. Veraldi's opinions were consistent with Dr. Dougherty's.  Tr. 28.

Plaintiff argues that the ALJ erred in relying on Dr. Veraldi's opinions as Dr. Veraldi testified that separating Plaintiff's substance abuse from his other mental impairments was "complicated, perhaps beyond [Dr. Veraldi's] ability to sort out."  ECF No. 14 at 21 (quoting Tr. 52-53).  Plaintiff's argument that Dr. Veraldi made the "explicit caveat of not being able to truly separate [Plaintiff's] PTSD from his alcohol use," ECF No. 14 at 21-22, is not unreasonable.  Again, however, where the evidence is susceptible to more than one rational interpretation, the Court may

1   not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.

2       In conclusion, the Court finds the ALJ's DAA materiality analysis legally

3   sound and supported by substantial evidence.

4   **B.   Credibility**

5       Plaintiff does not contest the ALJ's finding that Plaintiff's symptom

6   reporting is not entirely credible.  Nevertheless, Plaintiff takes issue with the ALJ's

7   finding that Plaintiff's credibility is diminished because he failed to seek regular

8   treatment.  Plaintiff argues that he could not afford treatment and that the ALJ

9   erred in placing "an impossibly high burden" on Plaintiff to explain why he did not

10  seek additional treatment.  ECF No. 14 at 18-20.

11      It is generally the province of the ALJ to make credibility determinations,

12  *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

13  cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

14  affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

15  testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

16  1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ

17  must identify what testimony is not credible and what evidence undermines the

18  claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

19      The ALJ provided a number of reasons for finding Plaintiff less than

20  credible.  The ALJ found that objective medical evidence did not support the level

21  of physical and mental limitation claimed by Plaintiff.  Tr. 26-27.  The ALJ noted

22  that Plaintiff inconsistently reported the severity of his depression and mental

23  disorders.  Tr. 27.  The ALJ also noted that Plaintiff made inconsistent statements

24  about his alcohol use.  Tr. 27-29.  The ALJ rejected Plaintiff's claim that he could

25  not afford treatment and that he was ineligible for state medical benefits because of

26  his wife's income.  Tr. 28.  At the hearing, the ALJ asked Plaintiff to provide

27  documentation or proof that that he could not receive mental health treatment or

28  medications due to his financial situation.  Tr. 28, 62.  The ALJ also required

Plaintiff to show that medication cost more than the beer Plaintiff purchased.  Tr. 28, 62.  The ALJ gave Plaintiff "more than three weeks" to provide such proof.  Tr. 28.

The Court agrees with Plaintiff that the ALJ likely erred in requiring Plaintiff to make this showing.[1]  An unexplained failure to seek treatment may be grounds to find a claimant less than credible, 20 C.F.R. § 416.930, but failure to seek treatment is generally excused if the claimant cannot afford it, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).   But given the ALJ's other reasons for finding Plaintiff less than credible, the Court find the error harmless.  An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  The ALJ's imposition of a high standard on Plaintiff to prove he could not afford treatment is inconsequential to the ultimate nondisability determination because the ALJ provided several other specific, clear, and convincing reasons for finding Plaintiff less than credible.  *See* Tr. 26-29; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony); *Smolen*, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's . . . prior inconsistent statements . . . and other testimony by the claimant that appears less than candid"); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination).  Plaintiff does not argue that these

---

[1]The Court considers Plaintiff's argument that the ALJ imposed too short of a time frame to provide the documentation, ECF No. 14 at 18, somewhat disingenuous.  At the hearing, Plaintiff's counsel specifically requested three weeks in which to provide the documentation.  Tr. 62.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 11

reasons are based on legal error or not supported by substantial evidence.  The ALJ
gave sufficient reasons in support of his adverse credibility determination and any
error is harmless.

**C.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ erred in rejecting the opinions of social workers
Gabriela Mondragon and Russell Anderson who completed evaluations for
Plaintiff for purposes of his applications for state benefits.[2]  ECF No. 14 at 14-17.

Only acceptable medical sources, including licensed physicians and
psychologists, can provide evidence to establish an impairment.  20 C.F.R. §

_____

[2]The ALJ noted that Mr. Anderson and Ms. Mondragon were supervised by
Phillip Rodenberger, Ph.D.  Tr. 22 (citing Tr. 219-41).  The Court can find no
evidence of Dr. Rodenberger's supervision in any part of these evaluations.  Mr.
Anderson and Ms. Mondragon signed their evaluations as the "examining
professional[s]."  Tr. 224, 233, 239.  There are signatures of a "releasing authority"
at Tr. 224 and 233, but it is impossible to tell if either of these signatures are Dr.
Rodenberger's.  Defendant appears to concede that Mr. Anderson and Ms.
Mondragon's evaluations were made under Dr. Rodenberger's supervision as
Defendant analyzes the ALJ's weighing of these evaluations under the "specific
and legitimate" standard (used in analyzing the weight given to opinions of an
acceptable medical source that are contradicted by other acceptable medical
sources).  ECF No. 19 at 12.  It is unclear how Plaintiff classifies Mr. Anderson
and Ms. Mondragon as Plaintiff sets forth the "specific and legitimate" standard,
ECF No. 14 at 14, but also mentions the rules for evaluating non-acceptable
medical sources, ECF No. 14 at 15.  As there is no conclusive evidence of Dr.
Rodenberger's involvement in Mr. Anderson's and Ms. Mondragon's evaluations,
the Court considers Mr. Anderson and Ms. Mondragon "other" sources.  20 C.F.R.
§ 416.913(d).

416.913(a).  The ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist or social worker.  20 C.F.R. § 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. § 416.913(d); SSR 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  Germane reasons to discount an opinion include contradictory opinions and lack of support in the record.  *Thomas*, 278 F.3d at 957.

Mr. Anderson completed a psychological/psychiatric evaluation of Plaintiff in March 2009.  Tr. 236-41.  Mr. Anderson noted that Plaintiff exhibited a number of mild and moderate mental health symptoms.  Tr. 237.  Mr. Anderson diagnosed Plaintiff with Bipolar II Disorder, PTSD, and Alcohol Abuse.  Tr. 237. Mr. Anderson opined that Plaintiff's impairments were not caused by alcohol abuse, but alcohol "[e]xacerbates [P]laintiff's depressive episodes [and] impairs [his] thinking and concentration."  Tr. 237-38.  Mr. Anderson found Plaintiff had a number of mild and moderate limitations relating to his cognitive and social functioning.  Tr. 238.  Mr. Anderson thought alcohol treatment would likely "improve [Plaintiff's] concentration [and] memory," medication would likely "stabilize" Plaintiff's mood swings, and psychotherapy would be necessary to address Plaintiff's trauma issues.  Tr. 237-38.  Mr. Anderson concluded that, "[a]fter protracted treatment, Plaintiff may be able to work at solitary, low stress work to accommodate anxiety, and relational [problems]."  Tr. 239.

Mr. Anderson completed a second psychological/psychiatric evaluation of Plaintiff in December 2009.  Tr. 228-35.  Mr. Anderson noted Plaintiff had symptoms of depression, anxiety, and hypomania.  Tr. 229.  Mr. Anderson diagnosed Plaintiff with Bipolar II disorder, PTSD, and alcohol abuse.  Tr. 230. Mr. Anderson noted that Plaintiff's alcohol use "[c]ontributes to depression,

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 13

disrupts[] concentration and memory impair[ments], thinking and judgment." Tr. 230. Mr. Anderson found Plaintiff had mostly moderate and marked limitations relating to his cognitive and social functioning. Tr. 231. In his medical source statement, Mr. Anderson concluded: "Plaintiff has not been able to demonstrate an ability to gain or sustain employment for the past 3 years. In addition to his mental health problems, his legal problems are a factor in getting and maintaining employment, as well as his age. He is currently too unstable to work." Tr. 231.

Ms. Mondragon completed a psychological/psychiatric evaluation of Plaintiff in June 2010. Tr. 219-26. Ms. Mondragon noted that Plaintiff's symptoms included poor concentration, sleep disturbance, flashbacks, and hypervigilance. Tr. 220-21. Ms. Mondragon diagnosed Plaintiff with PTSD and alcohol abuse based on Plaintiff's report of sustained full remission for two years. Tr. 221. Ms. Mondragon noted that there was no indication of recent alcohol use. Tr. 221. Ms. Mondragon found Plaintiff markedly limited in a number of cognitive and social areas of functioning. Tr. 222-23. Ms. Mondragon's medical source statement states:

> [Plaintiff] reports he had obtained his GED and studied for 2 years in college for a line mechanic. He earned 2 certificates at that time, however is unable of validity due to length of time when obtained. He has an interest in returning to school and interested in contacting DVR for additional support to return to school.

Tr. 223. Ms. Mondragon opined that Plaintiff could benefit from mental health treatment including individual/group therapy, case management services, and medication management. Tr. 223.

The ALJ gave limited weight to the psychological evaluations completed by Ms. Mondragon and Mr. Anderson. Tr. 22. The ALJ reasoned that these evaluations were "largely based" on Plaintiff's "self-reported symptoms and complaints," which the ALJ did not find entirely credible. Tr. 22. The ALJ also

reasoned that Plaintiff had an incentive to exaggerate his symptoms, as he sought the evaluations for "the continuation of his state assistance." Tr. 22. The ALJ further reasoned that "DSHS evaluators usually do not have a treating relationship with the claimant." Tr. 22. The ALJ reasoned that the evaluation forms were "completed by checking boxes and contain few objective findings in support of the degree of limitation opined." Tr. 22. Finally, the ALJ reasoned that the "definitions of limitations used by DSHS differ from the definitions of the Social Security Act Regulations for assessing mental disorders." Tr. 23.

The ALJ gave at least three germane reasons for giving little weight to Mr. Anderson and Ms. Mondragon's evaluations.

First, an ALJ may reject a medical opinion if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As discussed *supra*, the Court finds the ALJ's adverse credibility determination supported by substantial evidence and any errors harmless. Plaintiff argues that the ALJ did not make an adequate finding that the DSHS evaluations are based more heavily on Plaintiff's self-report than the evaluators' clinical observations. ECF No. 14 at 15-16. But Mr. Anderson and Ms. Mondragon's significant reliance on Plaintiff's (less than credible) self-reports is apparent, as they did not conduct any psychological testing and both of their medical source statements simply reiterate Plaintiff's problems rather than provide insight into what Plaintiff can do despite his limitations. *See* Tr. 223, 231. Reliance on Plaintiff's unreliable self-reporting was a germane reason for discounting the opinions of Mr. Anderson and Ms. Mondragon.

Second, the ALJ reasoned that "[Department of Social and Health Services (DSHS)] evaluators usually do not have a treating relationship with the claimant." Tr. 22. Although this a generalization, the reasoning applies to this case as the record contains no treatment notes, or other evidence, indicating that either Mr. Anderson or Ms. Mondragon treated Plaintiff on a regular, or even periodical,

basis.  Just as the opinions of examining physicians are generally entitled to less weight than the opinions of treating physicians, *Lester*, 81 F.3d at 830, the opinions of an examining "other" source is not entitled to as much weight as the opinion of a treating "other" source.[3]  Lack of a treating relationship is a germane reason to discount the opinions of Mr. Anderson and Ms. Mondragon.

Third, the fact that definitions of limitations used by DSHS differ from the definitions of the Social Security Act regulations used for assessing mental disorders is a germane reason to discount the opinions of "other" sources.  *See Martin v. Astrue*, 2011 WL 3626771, at *10 (E.D. Wash. Aug. 17, 2011) (comparing DSHS definitions to definitions contained in Social Security regulations and noting the "differences [between the definitions] reduce the value of an opinion based on the DSHS definitions").

In light of these germane reasons, the Court need not address the ALJ's additional reasons for giving limited weight to Mr. Anderson and Ms.

---

[3]Plaintiff argues that, "[g]iven the growing prominence of non-acceptable medical sources, the same preference for examining sources should be given to all examining medical sources."  ECF No. 14 at 15 (citing SSR 06-3p).  The Court agrees that there are cases where an opinion of an "other" medical source may outweigh the opinion of an acceptable medical source.  For instance, SSR 06-3p suggests that an "other" medical source might outweigh an acceptable medical source when the "other" medical source "has seen the individual more often than the [acceptable medical] source and has provided better supporting evidence and a better explanation for his or her opinion."  But neither Mr. Anderson nor Ms. Mondragon appear to have acted as Plaintiff's primary care provider or treated Plaintiff for purposes other than his DSHS evaluations.  The Court disagrees that Mr. Anderson and Ms. Mondragon's opinions are entitled to the same, or greater, weight as the opinions of acceptable medical sources.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 16

Mondragon's evaluations.  The ALJ did not err in giving little weight to the opinions of Mr. Anderson and Ms. Mondragon.

**D.    Step four**

Plaintiff argues that the ALJ erred at step four by not including a noise limitation in the ALJ's hypothetical questions to the VE and by not making explicit findings supporting the ALJ's conclusion that Plaintiff was capable of performing his past relevant work (PRW) as a material handler.  ECF No. 14 at 7-12.

At step four of the sequential evaluation process, the ALJ must examine a claimant's RFC and the physical and mental demands of the claimant's PRW.  20 C.F.R. § 416.920(e).  In finding that a claimant has the capacity to perform a past relevant job, the ALJ's decision must contain the following:

1.  A finding of fact as to the individual's RFC,

2.  A finding of fact as to the physical and mental demands of the past job/occupation, and

3.  A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing SSR 82–62).

**1.  Residual functional capacity (RFC)**

Plaintiff argues that the ALJ should have included a noise limitation in his hypothetical questions to the VE.  ECF No. 14 at 12-14.  As "[h]ypothetical questions posed to the [VE] must set out all the limitations and restrictions of the particular claimant," *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988), the Court finds Plaintiff's argument also applies to the ALJ's formulation of Plaintiff's RFC.

A claimant's RFC is "the most [a claimant] can still do despite [her]

limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."). In formulating an RFC, the ALJ weighs medical and other source opinion and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

State agency medical consultant Alfred Scottolini, M.D., reviewed Plaintiff's medical records in December 2010, noting a diagnosis of mild to moderate sensorineural loss in the right ear. Tr. 246. Dr. Scottolini opined that Plaintiff should "avoid all exposure to noise representing acoustic trauma." Tr. 246. Dr. Scottolini based this limitation on an audiological evaluation dated December 2, 2010. Tr. 249, 278. The ALJ gave significant weight to Dr. Scottolini's opinions. Tr. 26. The ALJ also found that Plaintiff had a severe impairment of Left Ear Hearing Loss—Tinnitus Partial at step two. Tr. 20. But the ALJ did not include a noise limitation in his formulation of Plaintiff's RFC. Tr. 25. The ALJ seemed to discount any limitations associated with Plaintiff's hearing by reasoning that state agency evaluator Guillermo Rubio, M.D., reviewed Plaintiff's most recent audiological evaluation (Tr. 278) and concluded that Plaintiff did not meet any listing level for hearing impairment. Tr. 23 (citing Tr. 293). The ALJ further noted that Plaintiff did not have any auditory difficulties during the hearing and Plaintiff never alleged any physical limitations, but rather focused solely on his mental impairments, Tr. 23.

The ALJ erred in rejecting Dr. Scottolini's assessment that Plaintiff should "avoid all exposure to noise representing acoustic trauma." Tr. 246. Simply because this limitation does not meet a Listing does not mean that it does not limit Plaintiff's ability to work to some lesser degree. Furthermore, the ALJ's assertion that Plaintiff never alleged physical impairments is incorrect. Although Plaintiff

focused on his mental impairments at the hearing, *see* Tr. 41, in his September 2010 Function Report, he checked a box indicated he had problems with hearing and further stated, "I can[']t hear in one ear and hearing is going in the other [ear]." Tr. 168; *see also* Tr. 250 (Plaintiff reporting to Dr. Dougherty that "[h]e is deaf in the left ear [and] losing hearing in his right ear").  Finally, the fact that Plaintiff did not have difficulty hearing at the administrative hearing is not necessarily inconsistent with the limitation assessed by Dr. Scottolini, i.e., Plaintiff's need to avoid "noise representing acoustic trauma."  Tr. 246.  In conclusion, the ALJ found Plaintiff had a severe hearing impairment at step two; the ALJ gave significant weight to Dr. Scottolini's opinion, which found Plaintiff's hearing resulted in a functional limitation; and, the ALJ did not provide adequate reasons for discounting this limitation.  On remand, the ALJ should give reasons for rejecting this limitation or should include a noise limitation in his RFC formulation and inquiries to the VE consistent with Dr. Scottolini's opinions.[4]

### 2.  Past relevant work (PRW)

Based on the testimony of the VE, the ALJ concluded that Plaintiff had PRW as a material handler.  Tr. 29.  Plaintiff argues that the ALJ failed to make specific findings regarding which of Plaintiff's past jobs qualified as work as a material handler.  ECF No. 14 at 8-9; *see also* U.S. Dep't of Labor, *Dictionary of Occupational Titles* (DOT) 929.687-030 *available at* 1991 WL 688174 (Material Handler).

PRW is work that (1) claimants performed in the last 15 years, (2) lasted long enough for claimants to learn how to do the job, and (3) rises to the level of

---

[4]As no evidence currently in the record contradicts Dr. Scottolini's opinions regarding Plaintiff's hearing limitations, the Court posits that the ALJ would need to provide "clear and convincing" reasons for rejecting such limitation.  *See Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 19

1  "substantial gainful activity," (SGA).  20 C.F.R. § 416.965(a); § 416.960(b)(1).

2  SGA is work that "involves doing significant physical or mental activities" that is

3  done "for pay or profit."  20 C.F.R. § 416.972(a)-(b).

4      Plaintiff argues that based on his earning records, he only engaged in SGA

5  in the year 1998.  Defendant does not appear to contest this assertion.  Rather,

6  Defendant argues that "[a]lthough the record contains inconsistencies between the

7  job titles Plaintiff might have held, all records indicate Plaintiff performed the job

8  for at least three months, which was long enough for him to learn how to perform

9  the job according to the DOT."  ECF No. 19 at 19 (citing Tr. 65, 152).

10     The Court finds that the ALJ did not make an adequate factual finding

11 regarding which of Plaintiff's past jobs constituted PRW as a material handler.

12 Plaintiff reported doing "[v]arious [g]eneral [l]abor [j]obs" in 1998.  Tr. 152; *see*

13 *also* Tr. 137 (Plaintiff's earning records).  But it is unclear what the physical and

14 mental demands of these jobs were or how the VE reached the conclusion that

15 these jobs "boil[ed] down," Tr. 65, to the job of material handler.  SSR 82-62

16 requires the ALJ to make a "finding of fact as to the physical and mental demands

17 of the past job/occupation."  The ALJ failed to make such a finding in this case.

18 Furthermore, the job of material handler involves a noise level of "[l]oud."  U.S.

19 Dep't of Labor, *Dictionary of Occupational Titles* (DOT) 929.687-030 *available at*

20 1991 WL 688174.  The Court found *supra* that the ALJ erred in rejecting the noise

21 limitation assessed by Dr. Scottolini.  If, on remand, the ALJ credits this limitation,

22 Plaintiff would likely be precluded from performing the job of material handler.

23     **3.  Residual functional capacity and past relevant work compared**

24     "To determine whether a claimant has the [RFC] to perform his past relevant

25 work, the [ALJ] must ascertain the demands of the claimant's former work and

26 then compare the demands with his present capacity."  *Villa v. Heckler,* 797 F.2d

27 794, 797–798 (9th Cir. 1986).

28     Given the ALJ's errors in the first two parts of the step four analysis, on

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 20

remand, the ALJ will need to make a factual finding that Plaintiff's RFC would permit a return to his past job or occupation.  SSR 82-62.

**E.    Hypothetical Question**

Plaintiff argues that the ALJ erred by not including a noise limitation in the ALJ's hypothetical question to the VE.  ECF No. 14 at 12-14.  As discussed *supra*, the Court found the ALJ improperly rejected Dr. Scottolini's opinion that Plaintiff should avoid "noise representing acoustic trauma."  Tr. 246.  On remand, the ALJ shall reevaluate Plaintiff's RFC consistent with this opinion and propound hypothetical questions to the VE that set out all of Plaintiff's limitations.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAlliser v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Additional

proceedings are necessary for the ALJ to reevaluate Plaintiff's RFC, determine whether Plaintiff can perform his PRW, and, if necessary, determine whether Plaintiff can perform other work that exists in significant numbers in the national economy.  The ALJ shall obtain supplemental testimony from a VE and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court affirms the ALJ's decision at steps two and three, but vacates the ALJ's decision at step four because the ALJ did not provide adequate reasons for rejecting Plaintiff's noise limitation assessed by Dr. Scottolini and did not make adequate findings regarding Plaintiff's functional ability to perform his past work.

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED October 1, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE